People of the State of Illinois, Plaintiff-Appellee, v. Ralph Falconer (Impleaded), Defendant-Appellant.

Gen. No. 53,586.

First District, Second Division.

October 21, 1969.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Shelvin Singer and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Edward V. Hanrahan, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, Assistant State's Attorney, and Robert K. Kelty, Special Assistant State's Attorney, of counsel), for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

In a bench trial the defendant was convicted of burglary and sentenced to a term of not less than one nor more than three years in the penitentiary. On appeal he argues that the trial court improperly examined a witness, and that he was not proved guilty beyond a reasonable doubt.

Early in April of 1968, during the rioting at the time of the assassination of Dr. Martin Luther King, Jr., the Kiddie Center Clothing Store at 4117 West Madison Street, Chicago, was burglarized. The store had been boarded up after the burglary to prevent damage to the merchandise still inside. On April 9, 1968, at about 12:30 p. m., three policemen riding in an unmarked squad car in the alley behind the store, saw people coming out of the rear door carrying packages. All three officers testified that they saw the defendant coming out of the store carrying merchandise. Officer Nyholt chased him through an adjacent parking lot and arrested him after about five minutes during which time the defendant dropped the items he had been carrying. The officer looked for them on the way to the squad car but did not find them.

At the trial the defendant waived his right to be present in the courtroom and remained outside during the State's evidence. He now urges before this court that he was not properly identified at the trial as the man who was seen leaving the building, and therefore was not proved guilty beyond a reasonable doubt. Defendant argues that he had remained outside of the courtroom to prevent the prejudicial confrontation in which he would

57

be the only defendant in the room and the witnesses would be almost certain to say he was the man they had seen at the time of the crime. He had stated: "If this is the same officer, the officer, I rather not be here because, because I know he can identify me because he talked to me."

On appeal, the defendant says the trial court erred in permitting him to remain out of the courtroom even though he had so requested. However, the prevention of the identification in the courtroom was the basis on which he had asked the trial court to accept his waiver. While Officer Nyholt was testifying the Assistant State's Attorney had requested that the defendant be brought in so that the officer could identify him as the man he had arrested. Defense objected, and the trial court sustained the objection. Defendant now argues that he was wrong in objecting to the State's motion that he be brought into the courtroom, and that it was error for the trial court to have so ruled.

Under the circumstances, the defendant's argument is extraordinary. He intentionally remained outside the courtroom during the State's evidence, and now on appeal urges that he was not properly identified in the courtroom; that the arresting officer was testifying to facts without having an opportunity to observe the defendant; that therefore, he could not testify that the man arrested and the "man on trial" were the same. The fact that the officer was denied the opportunity to observe the defendant in the courtroom was the defendant's own decision. We cannot reverse criminal convictions because some tactical ploy of the defense backfires.

To reverse this case on the basis of the above argument would be to hold that the defense counsel had a right to deny the State its opportunity to identify the defendant at the trial, then later on appeal, seek relief because the State did the best it could and was compelled to use a secondary means of identification. It is impossible to

create such a rule, and we find it difficult to believe that the defendant could seriously urge in this court that there was a "faulty identification" when it was he who refused to appear in court. Also, we must consider defendant's statement in the bench trial that if the officer came into court he would identify him because he had previously talked to him.

Defendant denied having been inside the store and testified that he was visiting a friend in the vicinity when he noticed police cars speeding through the parking lot. He said he became frightened and started walking away because he had previously been convicted of burglary. As a matter of fact, he had been convicted of burglary on three previous occasions.

At the trial the judge questioned the arresting officer at length, apparently trying to establish the ability of the officer to have observed the defendant carefully. The defendant argues that by asking those questions the trial court assumed the role of prosecutor. He states that the trial court "shed its robe of impartiality, acted as the prosecutor and denied the accused his right to a fair trial," and in support thereof cites People v. McGrath, 80 Ill App2d 229, 234 NE2d 660, and People v. Martin, 66 Ill App2d 290, 214 NE2d 324.

■ ■ In McGrath the magistrate himself elicited hearsay testimony which was damaging to the defendant, then indicated that he was relying on the incompetent testimony in reaching his decision. The magistrate went so far as to prove up venue for the State, after which he said to defense counsel: "You may cross-examine the witness." The magistrate appeared to have so thoroughly taken over for the prosecution that there seemed to be no necessity for the State to bring out any further evidence. In such a situation there is potential danger of the deprivation of a fair trial; however, the propriety of the court's examination must be "determined by the circumstances of each case and rests largely in the discre-

tion of the trial court." People v. Wesley, 18 Ill2d 138, 155, 163 NE2d 500. Also see People v. Trefonas, 9 Ill2d 92, 100, 136 NE2d 817.

The trial court in the instant case remained well within the boundaries of propriety. While in the situation just cited in McGrath the court assumed the role of prosecutor, in the case before us the court attempted to ascertain the truth on a more limited plane by remaining an objective observer while eliciting certain testimony in order to bring out the truth, without making any attempt to "damage" defendant's case. The court asked questions for the purpose of clearing up certain points it believed relevant for the sake of truth and not for conviction. It would be improper to apply McGrath to the situation in the instant case. After the trial court's questioning of Officer Nyholt, there was further cross-examination, redirect, recross and more redirect. In other words, the court's role did not predominate and could not be considered that of an advocate.

The other case cited by defendant in this connection, People v. Martin, supra, was a jury trial, where the possibility of harm resulting from the trial court's intervention is far greater than in a bench trial.

■ From the entire record of the case before us it is evident that the defendant was properly identified; that the court's examination of the witnesses was conducted properly; and that the defendant was proved guilty beyond a reasonable doubt. The judgment of the Circuit Court is affirmed.

Affirmed.

LYONS, P. J. and BURKE, J., concur.