UNITED STATES of America, ex rel. Jimmie ENOCH, Melvin Enoch, and Robert Enoch, Petitioners-Appellees,

v.

Neil F. HARTIGAN, Attorney General of the State of Illinois, Respondent-Appellant.

No. 84–1366.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 17, 1984.

Decided July 18, 1985.

Michael V. Accettura, Asst. Atty. Gen., Springfield, Ill., for petitioners-appellees.

Jeffrey R. Martin, Cook County Public Defender, Chicago, Ill., for respondent-appellant.

Before BAUER, Circuit Judge, POSNER, Circuit Judge, and CAMPBELL, Senior District Judge.*

WILLIAM J. CAMPBELL, Senior District Judge.

This is an appeal from a district court decision reported at 581 F.Supp. 423 (D.C. Ill.1984) which grants a habeas corpus petition to three Illinois state criminal defendants. The petitioners are three brothers: Jimmie, Melvin and Robert Enoch. After a jury trial, they were convicted of rape and aggravated assault. The convictions were affirmed by the Illinois appellate court. See *People v. Enoch*, 104 Ill.App.3d 1203, 63 Ill.Dec. 295, 437 N.E.2d 944 (Ill.App., 1982). The Illinois Supreme Court denied leave to appeal. Petitioners subsequently filed their habeas corpus petition in the United States District Court for the Northern District of Illinois. Upon cross-motions for summary judgment, District Court Judge Prentice H. Marshall granted the habeas petition concluding that the trial court had violated petitioners' Sixth Amendment right by precluding the defense from calling a particular witness. The court concluded that despite the failure to adhere to discovery rules regarding disclosure of the witness, constitutional considerations compelled the trial court to permit the witness to testify. A review of this conclusion is the sole issue before this court. This court has jurisdiction of this appeal under 28 U.S.C. § 1291.

A complete recitation of the facts can be found at 581 F.Supp. 423. A brief review of the sequence of events during trial will provide the necessary perspective for our analysis.

---

* The Honorable William J. Campbell, Senior District Judge of the Northern District of Illinois, is sitting by designation.

The prosecution's main witness was the alleged victim, Sandra Davis. She testified she was returning from a visit to her cousin's house, Pamela Shaviers, at about 4:15 a.m. on the morning of December 6, 1979 when she encountered Robert and Melvin Enoch at 2031 South Clark Street. According to Davis, Robert and Melvin forced her into an elevator at the above address and took her to their apartment. At this point she alleges she was raped by the three petitioners. Davis claimed she left the Enoch residence at 7:20 a.m. and returned home. She reported the incident to police later in the day. She also visited a hospital later that day and the examining physician testified as to bruises and evidence of sexual intercourse.

The defense presented six witnesses. The first was a police investigator who spoke with Davis at the hospital and received a recital of the above facts.

Willie Enoch, petitioner's mother, next testified she was in the apartment during the night in question and let Jimmie and Melvin in at about 4 a.m. to 4:30 a.m. She did not specify if anyone else accompanied them. Mrs. Enoch testified she did not hear any noise or commotion in the apartment that night and fell asleep at approximately 5 a.m.

At this point in the trial the court recessed for lunch. There were still four defense witnesses and one rebuttal witness scheduled to testify. After lunch petitioner's attorneys notified the court that they had discovered an additional witness, a Patricia Griffin. Petitioners moved to amend their answer to the state's discovery request regarding the designation of witnesses. The prosecution objected. Defense counsel argued the new witness was a material witness and made the following offer of proof: That Patricia Griffin, whose apartment abutted the Enoch apartment, would testify she left her apartment at 7 a.m. on the morning of the alleged incident and that she saw Sandra Davis, a long-time acquaintance, on the way to a bus stop arguing with a man who shouted: "Bitch, where is the money?" Defense counsel

also represented to the court that Ms. Griffin was in a bedroom abutting the Enoch bedroom at the time of the alleged assault and would testify as to what, if anything, was heard from the apartment during that time period.

Defense counsel denied any bad faith in the late discovery of Ms. Griffin and claimed they had not previously been informed of her testimony. The prosecution responded that Mrs. Enoch knew of Ms. Griffin's existence and that the sanction of exclusion should be applied. However, Ms. Griffin was available to be interviewed by the prosecution prior to her testifying. Furthermore, the prosecution did not specify any prejudice that would result from Griffin's testimony.

The trial judge denied petitioner's motion to amend the witness list. He stated that prejudice to the prosecution was not his only concern but also possible design in that the state had rested and the defense already commenced. As a result, petitioners were allowed only to call the four witnesses remaining on their next witness list. Charles Enoch testified he, Theresa Mosely, Michael Mayberry, Sandra Davis, Joyce Darnell, and Jimmie, Melvin and Peggy Enoch were together until 6 a.m. on the morning of December 6th. Charles stated that Davis, Robert Enoch and Mayberry left in close succession at about that time.

Theresa Moseley corroborated the testimony of Charles Enoch. She also stated she had known the alleged victim for five or six years and that "we use [sic] to disco together, and we use [sic] to have sex with mens [sic] for money." The final two defense witnesses, Joyce Darnell and Sherri Edwards, also corroborated Charles Enoch's testimony.

The prosecution's one rebuttal witness was Pamela Shaviers, Sandra Davis' cousin. Shaviers corroborated Davis' testimony by saying Davis visited her from 8 p.m. to 4:15 a.m. on December 6th and that she walked Davis to the bus and watched her leave.

This is a case where the State's interest in applying a discovery rule must be

weighed against the defendants' Sixth Amendment right to a fair trial. In this situation the Seventh Circuit has adopted the following analysis:

"[T]he right of a defendant to present relevant and competent evidence is not absolute and many 'bow to accommodate other legitimate interests in the criminal trial process,' ... although the competing state interests must be substantial to overcome the claims of the defendant. Our task is thus to evaluate the exculpatory significance of the proffered evidence ... and then to balance it against the competing state interest in the procedural rules that prevented the defendant from presenting this evidence at his trial." [Citations and footnotes omitted.] *McMorris v. Israel,* 643 F.2d 458, 461 (7th Cir.1981). See also *Parisie v. Greer,* 671 F.2d 1011, 1018 (7th Cir.1982).

Petitioners' proffered evidence was highly significant when considered in light of the other evidence in the case. The testimony at trial was conflicting with respect to the events of December 6th. The prosecution's only direct inculpatory evidence came from the alleged victim. Ms. Griffin's eyewitness account of the alleged victim's conduct during a portion of the time in question was clearly material testimony. If Ms. Griffin had heard a man shout at Ms. Davis the morning after the alleged incident, "Bitch, where's the money?", this would suggest Ms. Davis was engaged in prostitution the night of the alleged incident. Such testimony is material to the issue of this case and the jury was entitled to consider it. We reject the State's contention that Ms. Griffin's testimony was cumulative. While Theresa Mosely stated that Davis was a prostitute, no evidence was presented as to whether Davis was engaged in prostitution on the evening in question.

The State also claims the Griffin testimony would only have presented an alternative basis for explaining Davis' bruises. Yet the narrower issue of the bruises is significant to petitioners' defense since it is crucial to the charge of assault. Finally, if Ms. Griffin were in an adjoining room at the Enoch apartment during the morning hours of December 6th and heard no noise, the jury could infer the following story from her testimony alone: that Davis was a prostitute, that she was working that night, that the Enochs (or others) failed to pay for her services and that this caused the physical confrontation with a pimp the following morning which resulted in bruises to Davis' body. Petitioners' inability to present this evidence to the jury was constitutional error.

The State's interest in applying discovery rules was not so substantial that it could override the Sixth Amendment considerations surrounding this case.

"In balancing the competing interests ... we must closely examine the justification for the state interest ... The principal reason for notice rules, as we noted at the outset of this opinion, is prevention of surprise to the state, not punishment of the accused for mere technical errors or omissions." *Alicea v. Gagnon,* 675 F.2d 913, 924 (7th Cir.1982).

In addition to preventing surprise, other factors considered before a witness preclusion sanction is employed to enforce discovery rules are: the effectiveness of less severe sanctions, the materiality of the testimony to the outcome of the case, prejudice to the other party caused by the testimony, and the evidence of bad faith in the violation of the discovery rules. See *Fendler v. Goldsmith,* 728 F.2d 1181 (9th Cir. 1983).

While there may have been some element of surprise involved in Ms. Griffin's late discovery she was available to be interviewed by the prosecution. Therefore, only a brief recess was necessary. The prosecution never specified what prejudice would result from her testimony. Furthermore, there was no evidence of bad faith. The trial court's speculation that some "design" could be present is also unsubstantiated and without any evidentiary basis. Less severe sanctions were available but apparently were not considered by the trial judge. Considering the exculpatory signifi-

cance of the Griffin testimony it should have been admitted.

The State argues Ms. Griffin should not testify because defendants' mother knew of her existence and that such negligent behavior should not be used as a vehicle to avoid discovery notice rules. However, there is no basis in the record for imputing Mrs. Enoch's knowledge to her sons.[1] Absent bad faith on the part of petitioners, Mrs. Enoch's negligence should not preclude the Enoch brothers from fully telling their side of the story.

The State believes we should employ the standard utilized in *United States v. Rogers*, 475 F.2d 821 (7th Cir.1973), which was later used in *United States ex rel. Chatman v. Lane*, 573 F.Supp. 693 (N.D.Ill. 1983). Under the *Rogers* test a defendant's Sixth Amendment rights are considered violated when his "inability to make the [witness] inquiry created a substantial danger of prejudice by depriving him of the ability to test the truth of the witness's direct testimony." See *Rogers*, 475 F.2d at 827. For the reasons stated above, we believe petitioners have met the *Rogers* standard in that they were prejudiced by Ms. Griffin's inability to testify. Further, the *Rogers* case is distinguishable from the case *sub judice*. In *Rogers* the issue was a defendant's right to cross-examine [confront] a witness. In our case the issue is a defendant's right to present a witness in his defense. In this situation the *McMorris* guidelines are appropriate.

*Chatman* is also distinguishable. The witness who was not allowed to appear in *Chatman* was being used only to impeach another witness's identification skills and was not of the same significance as Ms. Griffin in our case. Indeed, the *Chatman* court applied the harmless error rule in deciding there was no error at the state level. We have already concluded the harmless error cannot be applied in our case. This is because we believe there is a

reasonable possibility the exclusion of the Griffin testimony affected the jury's verdict and we cannot conclude the error was harmless beyond a reasonable doubt. See *Allison v. Gray*, 603 F.2d 633, 634 (7th Cir.1979). Since we do not find the error here harmless, a final case advanced by the State, *United States v. Davis*, 639 F.2d 239 (5th Cir.1981), does not enhance the State's position. The primary holding in *Davis* is that the Sixth Amendment forbids the exclusion of otherwise admissible evidence solely as a sanction to enforce discovery rules against criminal defendants. *Id.* at 243. First, this holding supports the district court holding in the case *sub judice*. Secondly, while *Davis* does hold the harmless error rule can nullify this principle, we have found no harmless error and therefore *Davis* is not helpful here.

For the reasons set forth above, the decision of the district court is affirmed.

---

1. Indeed, the State admits this on page 18 of its brief:

"... the District Court first noted that it appears not to have been petitioners' fault that Griffin was not discovered as a witness until late into the trial. Respondent does not dispute this conclusion ..."