**People of the State of Illinois, Plaintiff-Appellee, v. Moczarney Martin, Defendant-Appellant.**

**Gen. No. 50,273.**

First District, Third Division.

January 6, 1966.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Marshall Hàrtman and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Kenneth L. Gillis, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE DEMPSEY delivered the opinion of the court.

Moczarney Martin and Augustus Varnado were indicted for burglary and theft, were tried before a jury, were found guilty of the theft of property worth more

than $150 and were sentenced to the penitentiary for two to eight years. This appeal is by Moczarney Martin only.

The errors relied upon for reversal are prejudicial argument by the State's Attorney, prejudicial conduct by the court, failure to compel disclosure of the name of a police informer, violation of the defendant's constitutional rights and insufficient proof to establish the defendant's guilt beyond a reasonable doubt.

The home of Carol Shields was broken into on April 15, 1963, and considerable property was stolen including a hi-fidelity AM–FM phonograph valued at $400. On April 30th the police received information which caused them to look for Martin and which led them to the location of the phonograph. On the way to the address given them by their informant they came upon Martin and arrested him. He was told that they had learned that he and another man had committed the burglary and had disposed of the phonograph. After first denying knowledge of the theft, Martin admitted that he and Varnado had taken the phonograph. He agreed to aid in finding Varnado.

The policemen then went to the residence of Joseph Ramey who told them that the phonograph was in his home and that he had received it on April 16th from Martin and Varnado as security for a $75.00 loan made to Martin, whom he had known for years. He stated that Martin had introduced Varnado as his uncle and had said that his uncle would furnish the security. The three then went to Varnado's home, obtained the phonograph and brought it to Ramey's residence. Ramey repeated his story at the police station in the presence of Martin, who admitted its truthfulness.

Martin was placed in a squad car and accompanied the policemen to Varnado's address. Varnado was arrested and the policemen questioned two women who were

in his apartment. Varnado asked the officers not to involve the women, who he said were innocent of wrongdoing, and volunteered to tell the whole story. He said that he and Martin stole the phonograph, kept it overnight in his girl friend's home and the next day disposed of it as related by Ramey.

At the trial Ramey repeated his story. Martin and Varnado denied the theft, denied admitting it to the police and denied knowing each other. Martin testified that he was acquainted with Ramey. Varnado denied knowing Ramey.

It is not necessary to consider four of the five claims of error asserted by the defendant because error was committed by the trial judge himself which requires reversal of the judgment.

Martin acknowledged that he was a drug addict and admitted that he had been found guilty of selling narcotics which conviction, at the time of his trial, was being appealed (People v. Martin, 63 Ill App2d 492, 211 NE2d 753 (1965)). He testified that because of his narcotics addiction he was very sick at the time of his arrest. Under cross-examination by the prosecutor, he said that he spent most of his weekly pay checks for heroin. Upon redirect examination he explained that when he had no money, or was ill, his suppliers would give him credit and that, his relatives would give him money. He also said that he had taken a narcotics cure about a month and a half before his prior conviction. An objection was made. The court sustained the objection and interposed:

> "The jury will disregard the questions of counsel because they are solely to create sympathy for the defendant."

The defendant further testified, on redirect examination, that he had been to Ramey's house a few times

and had gambled there. An objection was made. The court remarked:

"Your witness testified that everything he earned he spent on narcotics, so evidently I don't know what he used to gamble."

An objection was made to the court's remarks. Soon thereafter Martin's attorney stated he had no further questions. The court then questioned the defendant as follows:

"The Court: Q. Mr. Martin, you say you bought narcotics on credit?
A. Yes, sir.
Q. From who?
A. Well, sir, at the time when I was asked the same question—
Q. From who?
A. I won't answer the question, sir.
Q. You don't want to answer that question?
A. No sir.
Q. How much narcotics did you buy on credit?
A. What it required for me to get my sickness off, sir.
Q. What is that?
A. What it had required for me to get my sickness off.
Q. How much do you owe now for narcotics?
A. I don't owe anything.
Q. You don't owe anything?
A. No, sir.
Q. You paid it all back?
A. No, sir, I can't recall paying it all back.

293

Q. Well then, you must owe somebody.
A. There is a possibility I do.
Q. Who?
A. Well, I haven't stated any names.
Q. Who?
A. I haven't stated any names.
Q. I'm asking you who do you owe?
A. I won't answer that question.
Q. You don't want to answer that question?
A. No.
Q. Why not?
A. I can't recall that person's name.

The Court: All right.

Defendant's Counsel: Could I ask him a couple of questions?

The Court: No."

The court's remarks tended to disparage the defendant's case and the court's questions discredited him. The questions were not relevant to a material issue, placed the defendant in a difficult position and were improper before a jury. They were searching and persistent, were asked as though in cross-examination and indicated that the court did not believe the defendant; their skeptical nature and partisan character deprived the defendant of an impartial trial.

 It is the duty of a court to see that every defendant, guilty or innocent, receives a fair trial. A court must not, directly or indirectly, convey its opinion of a defendant's credibility to a jury. Jurors are ever watchful of the attitude of a trial court and any disclosure of disbelief or hostility is likely to influence their verdict. People v. Santucci, 24 Ill2d 93, 180 NE2d 491; People v. Marino, 414 Ill 445, 111 NE2d 534; People v. Garines, 314 Ill 413, 145 NE 699.

Justice dictates that this case be retried. The judgment is reversed and the cause remanded.

Reversed and remanded.

SULLIVAN, P. J. and SCHWARTZ, J., concur.