THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
WILLIAM TAYLOR, JR., Defendant-Appellant.

Fifth District    No. 5—84—0179

Opinion filed September 18, 1985.—Rehearing denied October 9, 1985.

Randy E. Blue and Kim G. Noffke, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Alan C. Downen, State's Attorney, of McLeansboro (Kenneth R. Boyle, Stephen E. Norris, and Michael Simkin, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE KARNS delivered the opinion of the court:

William Taylor, Jr. was found guilty of theft of firearms not from the person, a Class 4 felony, by a jury in the circuit court of Hamilton County. (Ill. Rev. Stat. 1983, ch. 38, par. 16—1(d)(1).) A jury trial conducted on August 25, 1983, resulted in a mistrial because the jury was unable to agree upon a verdict. A second jury trial was conducted on October 31 and November 1, 1983. Taylor was found guilty of theft and was sentenced to a term of 18 months' imprisonment.

Defendant presents two issues, both of which relate to the former jury trial which ended in a hung jury.

First, defendant contends that the State failed to prove him guilty beyond a reasonable doubt. Defendant cites the testimony of two juvenile offenders, D.J. and J.R., from whom he allegedly received stolen firearms in return for two bags of marijuana, and calls their testimony "uncorroborated, conflicting and at times incredible." Defendant, for this contention, seeks review only of the evidence produced at the trial which resulted in a mistrial because of a hung jury. No argument is made with regard to the sufficiency of the evidence in his second trial.

We have taken with this case the State's motion to strike the Argument I section of defendant's brief and those parts of the record submitted in support thereof. The State contends that this court lacks jurisdiction to review the evidence at defendant's first trial because it did not result in a final judgment. Defendant responds that the evidence presented at his first trial is reviewable, and because it is insufficient to establish guilt, he contends, his conviction in the second trial should be reversed. We deny the State's motion and will address defendant's argument.

■ Defendant relies on a series of Federal cases to support his contention that this court can review the evidence at the first trial. Defendant concedes that he is not raising an issue of former jeopardy. We therefore reject his contention that these Federal cases are supportive of his position as the issues raised in those cases clearly relate to principles of former jeopardy and are decided on that basis. A similar contention was rejected in *People v. Schelsky* (1985), 134 Ill. App. 3d 1044.

In *United States v. Richardson* (D.C. Cir. 1983), 702 F.2d 1079, for example, the defendant appealed from orders denying his motion for judgment of acquittal and his motion to dismiss on the ground of former jeopardy. The Court of Appeals for the District of Columbia Circuit was reversed on review of its determination that it lacked jurisdiction to consider the merits of the double jeopardy claim. (*Richardson v. United States* (1984), 468 U.S. 317, 82 L. Ed. 2d 242, 104 S. Ct. 3081.) Nonetheless, the Supreme Court, after a thorough analysis of double jeopardy principles, rejected the defendant's claim that a second trial following a hung jury on two of three counts would violate the double jeopardy clause of the fifth amendment. As defendant's original jeopardy never terminated, he had no valid double jeopardy claim "[r]egardless of the sufficiency of the evidence at [his] first trial." 468 U.S. 317, 325-26, 82 L. Ed. 2d 242, 251, 104 S. Ct. 3081, 3086.

Similarly, *United States v. Brack* (7th Cir. 1984), 747 F.2d 1142, *cert. denied* (1985), 469 U.S. 1216, 84 L. Ed. 2d 339, 105 S. Ct. 1193, *United States v. Gulledge* (11th Cir. 1984), 739 F.2d 582, *United States v. Sneed* (5th Cir. 1983), 705 F.2d 745, *United States v. Cannon* (7th Cir. 1983), 715 F.2d 1228, *United States v. Rey* (5th Cir. 1981), 631 F.2d 222, and *United States v. Balano* (10th Cir. 1979), 618 F.2d 624, all involve double jeopardy claims; therefore, the defendant's reliance on the holdings of these cases is not persuasive in support of his argument that his subsequent conviction should be reversed outright for the State's failure to present sufficient proof of guilt at the first trial where the jury could not reach an agreement. If, as held in *Richardson v. United States* (1984), 468 U.S. 317, 325-26, 82 L. Ed. 2d 242, 251, 104 S. Ct. 3081, 3086, retrial after a hung jury does not subject a defendant to double jeopardy "[r]egardless of the sufficiency of the evidence at [his] first trial," then the sufficiency of the evidence at that trial is of no concern after there has been a conviction in a second trial.

Defendant has not cited any Illinois authority nor have we found any case which would authorize appellate review of the evidence at

the first trial under these circumstances. This is especially true since defendant is not claiming double jeopardy and since defendant presented no motions for acquittal or directed verdict at either the close of the State's case or at the close of all the evidence. His first application to the court for any such relief came only in a post-trial motion following his second trial where he claimed, *inter alia*, that the verdict was contrary to law and not supported by any evidence. We have noted earlier that defendant has not challenged here the sufficiency of the evidence presented at his second trial.

For these reasons, we conclude that we should not review the evidence produced at the first trial. We would add, however, that we have reviewed the evidence at the first trial and would, if required to rule on this issue, conclude that the evidence offered at the first trial was not insufficient to warrant a determination that the defendant knowingly obtained control over stolen property knowing the property to have been stolen by another and intending to deprive the owner permanently of the use or benefit of the property. Ill. Rev. Stat. 1983, ch. 38, par. 16—1(d)(1).

According to the juvenile offenders' testimony, their crime spree on the morning of November 28, 1982, started when they stole a Lincoln Continental in Carmi at about 1 a.m. They drove the car to Enfield, where it became stuck in mud. They abandoned the car and stole a pick-up truck owned by J. A. Ag Supply. They found a .22-caliber revolver and a 12-gauge shotgun behind the seat. McLeansboro was their next destination, where they stole another pick-up and then drove both trucks to Broughton, where they went to defendant's housetrailer at about 4 a.m. D.J. testified they went there because defendant had told him that he would buy anything D.J. could steal. D.J. knew the defendant and previously had been employed by him. D.J. also testified that he had transacted similar illegal business with the defendant on four occasions past.

Both juvenile witnesses testified about what happened inside the trailer. Their testimony was in certain respects inconsistent, but not significantly so. D.J. testified that he and J.R. went out to get the guns after they got there. J.R. testified, "We had brought them in with us." D.J. testified that he did not hear defendant's television so it must not have been on. J.R. testified that the television was on, and he watched it. D.J. testified that he and J.R. smoked about one-fourth of a marijuana cigarette on the way to Evansville, Indiana, later that morning and that they arrived there about 6 a.m. D.J. testified that on the way to Evansville "we lit one up but we didn't smoke it," and that they arrived there about 10 or 11 a.m., but added, "I

don't think it was quite that late."

The juvenile witnesses were consistent in their descriptions of the events leading up to their trip to Broughton, the alleged deal inside the trailer, and the activities later on into the daylight hours. Both testified that D.J. asked the defendant if he wanted to buy two guns and the defendant responded by asking them if they were "hot." D.J. testified that he told the defendant the guns were as "hot" as the truck he had just stolen. Both witnesses testified that the defendant asked to look at the guns and after inspecting them offered to trade "about two 'lids' of marijuana" for them. The boys accepted the deal, whereupon, they testified, the defendant went to get the marijuana from a wooden box. He placed some in a small plastic bag, which J.R. got, and some in a brown paper bag, which D.J. got. The deal completed, the juveniles left and drove on to McLeansboro. There, one of the trucks ran out of gas, so they drove the other truck around and looked for another car to steal. They found a tan Oldsmobile, which they stole and drove to Evansville, where they stopped at D.J.'s aunt's house. To reiterate, the evidence at the first trial could support a guilty verdict.

██ Defendant's second contention is that he was denied effective assistance of counsel at his second trial because counsel failed to impeach the State's key witnesses "after they altered their testimony" and failed to object to improper remarks by the prosecutor during closing argument.

In Illinois, a single standard is employed to determine ineffective assistance of counsel. (*People v. Royse* (1983), 99 Ill. 2d 163, 457 N.E.2d 1217.) The competency of counsel is presumed and can only be overcome by strong and convincing proof of incompetency. (*People v. Stewart* (1984), 101 Ill. 2d 470, 463 N.E.2d 677.) The defendant bears the burden of establishing his trial counsel's actual incompetence as reflected in the representation and substantial prejudice resulting therefrom. *People v. Witherspoon* (1973), 55 Ill. 2d 18, 21, 302 N.E.2d 3, 4-5.

██ We do not agree with defendant that his counsel's failure to impeach the juveniles' testimony in the second trial with prior inconsistent testimony amounts to ineffective representation. As noted before, the inconsistencies were minor, having to do mainly with collateral matters relating to the events alleged to have transpired, such as whether the television was on or off, whether the guns were taken in initially or later, whether they smoked marijuana afterwards and what time they got to Evansville later that morning. The jury was fully aware of their dubious credibility and numerous juvenile offenses, yet

it chose to believe them, despite the court's instruction to view accomplice testimony with suspicion and caution. Moreover, the juveniles' testimony was argued as being inconsistent in various respects by defense counsel during his closing argument. We cannot say that defendant was prejudiced by his trial counsel's representation or trial tactics.

We likewise do not agree with defendant that, because counsel failed to object to certain remarks of the prosecutor in closing argument, he was denied effective assistance of counsel. Defendant presented an alibi of sorts when he introduced evidence that he was with his wife and stepchildren, among others, at their rented house the night of November 27 attending his stepson's birthday party. He also produced evidence tending to establish that he was required to be at the house constantly in order to attend his wife's convalescent needs, and that, therefore, he could not have been at their trailer that morning when the juveniles allegedly arrived. The prosecutor argued:

> "Let's look at this alibi a little further. On the night of the 27th there was a birthday celebration. It was a birthday celebration for one of the defendant's wife's children. She testified they are both teenagers. They are both living at home. And they are not physically disabled and they are in school. They were both home on the night of the 27th. They were both home in the morning of the 28th. They were home the whole period of time. Now where are they today? They are old enough to testify. They are teenagers. They are not physically disabled. They are in school. Do you think maybe they could say they saw the defendant there on the evening of the 27th? That when they got up on the morning of November 28 he was still there, in the bed or wherever, he was still there in that house. It is strange isn't it that they are not here to say that. Think about it."

Citing *People v. Beller* (1979), 74 Ill. 2d 514, 386 N.E.2d 857, defendant concludes that these comments were improper. *Beller* is distinguished, however, because there the court was concerned specifically with comments regarding defendant's failure to call a nonalibi witness. "Because the witness was not an alibi witness and there is no showing that he was not equally available to both parties, the remark was improper. (*People v. Rubin* (1937), 366 Ill. 195; *People v. Mays* (1972), 3 Ill. App. 3d 512.)" (74 Ill. 2d 514, 526, 386 N.E.2d 857, 862.) However, the court in *Mays* cited with approval the following language from *People v. Gray* (1964), 52 Ill. App. 2d 177, 190, 201 N.E.2d 756, 763:

"Where the defendant injects into the case his activities with potential witnesses during a particular period of time ostensibly for the purpose of establishing an alibi for the time of the commission of the crime charged, his failure to produce such witnesses is a proper subject of comment on the part of the State."

It was proper for the State to comment on defendant's failure to call his stepchildren as witnesses. They cannot be considered equally available to the prosecution. They could either support defendant's alibi or explain why they could not establish defendant's presence at the house on the dates in question.

■ Lastly, the defendant contends that the prosecutor's following remarks addressed crime in society at large and therefore were unduly prejudicial:

"And the jury is only as sound as the men and women on it. Today you are in a position to do something about a person like the defendant who engaged in this type of activity. This is your community and people in this country have the right to live free of people like the defendant and others who choose to commit this type of crimes [*sic*]. Your failure to convict this man is not only telling him that what he did is all right, but sanctioning future conduct of this type. Ladies and gentlemen if you care about the truth and the law enforcement and the community you live in, you will find this man guilty. In fact, nothing short of that from the evidence you heard is justice. Thank you."

We do not agree. It is proper for the prosecutor to dwell on the evil results of crime and to urge the fearless administration of the law in his closing argument. (*People v. Jones* (1982), 108 Ill. App. 3d 880, 888, 439 N.E.2d 1011, 1017.) Where argument is based on the facts in evidence, and the inferences which may be drawn therefrom, the argument is proper. (*People v. Halteman* (1956), 10 Ill. 2d 74, 139 N.E.2d 286.) Here, the prosecutor not only specifically referred to the evidence in this case, but also referred specifically to the defendant six times in this quoted passage. We believe the comment is permissible and therefore find no error in this regard.

For all of the foregoing reasons, the judgment of the circuit court of Hamilton County is affirmed.

Affirmed.

WELCH and KASSERMAN, JJ., concur.